# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                       CV 16-664 WJ/WPL
                                            CR 13-2624 WJ

PHILLIP NAPOLEON CONTRERAS,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before me on Phillip Contreras's Motion Under 28 U.S.C. § 2255 and *Johnson v. United States*, 135 S. Ct. 2551 (2015), to vacate, set aside, or correct his sentence (CV Docs. 1, 10, 18; CR Docs. 42, 50, 58).[1] Contreras argues that several of his previous felony convictions no longer qualify as "violent" felonies under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1). The United States contends that Contreras waived his right to collaterally attack his conviction and sentence and is therefore not entitled to relief. I recommend that the Court deny Contreras's motion.

### BACKGROUND

Contreras pleaded guilty, pursuant to a plea agreement, to a two-count information on August 7, 2013. (CR Doc. 24.) Count 1 charged him with possession with intent to distribute five grams and more of methamphetamine and aiding and abetting, in violation of 18 U.S.C. § 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2. (*Id.*) Count 2 charged him with being a felon in possession of a firearm and ammunition in violation 18 U.S.C. §§ 922(g)(a) and 924(a)(2). (*Id.*)

---

[1] All citations to "CV Doc." refer to documents filed in the civil case, CV 16-664 WJ/WPL. All citations to "CR Doc." refer to documents filed in the criminal case, CR 13-2624 WJ. Documents filed in both cases are cited by reference to the corresponding document in the civil case.

As part of his plea agreement, Contreras waived certain rights on appeal. Contreras's "Waiver of Appeal Rights" reads:

> . . . In addition, the defendant agrees to waive any collateral attack to this conviction and the sentence imposed, including any fine, pursuant to 28 U.S.C. §§ 2241, 2255, or any other extraordinary writ, except on the issue of counsel's ineffective assistance in negotiating or entering this plea or this waiver.

(CR Doc. 27 at 7.)

The Presentence Investigation Report ("PSR") detailed at least three violent felonies. Because Contreras pleaded to a controlled substance offense and to being a felon in possession of a firearm, he qualified as both an armed career criminal under the ACCA and a career offender under the Sentencing Guidelines.

The PSR calculated Contreras's criminal history category as a level VI and his offense level at 31, after a three point reduction for acceptance of responsibility. At the sentencing hearing, the United States moved for a one level reduction, leaving Contreras with a criminal history category VI, offense level 30, and Guidelines' range of 168-210 months' incarceration. The Court imposed a sentence of 168 months as to each count, with the sentences to run concurrently. (CR Doc. 37.)

Pursuant to 18 U.S.C. § 924(a)(2), a person convicted of being a felon in possession of a firearm in violation of § 922(g) may be fined, imprisoned for not more than ten years, or both, unless that person is deemed an armed career criminal pursuant to § 924(e)(1), in which that person shall be sentenced to at least fifteen years' imprisonment.

## DISCUSSION

Contreras argues that he no longer qualifies as an Armed Career Criminal because several of his prior felony convictions no longer qualify as violent felonies for purposes of the ACCA. Thus, contends Contreras, his sentence must be amended. The United States raises a threshold

issue to which Contreras did not respond: whether this challenge falls within the scope of his waiver of appeal rights, and whether that waiver is enforceable.

A court must conduct a hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also United States v. Lopez*, 100 F.3d 113, 119 (10th Cir. 1996). Under this standard, "the petitioner bears the burden of alleging facts which, if proved, would entitle him to relief." *Hatch v. Oklahoma*, 58 F.3d 1447, 1457 (10th Cir. 1995) (quotation omitted), *overruled on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001) (en banc). Accordingly, if the prisoner alleges facts which, if believed, cannot be grounds for relief, there is no need for a hearing. *Id.* Additionally, the petitioner's "allegations must be specific and particularized; conclusory allegations will not suffice to warrant a hearing." *Id.* (citation and internal punctuation omitted). If the claims relate to occurrences in the courtroom or evidence in the record, then the Court need not conduct a hearing. *Machibroda v. United States*, 368 U.S. 487, 494-95 (1962).

Because the record alone establishes that Contreras's § 2255 motion should be denied, I did not hold an evidentiary hearing in this matter.

There are, essentially, two issues: 1) whether this motion falls within Contreras's waiver of collateral attack and therefore whether the waiver applies; and 2) if the waiver applies, whether it is enforceable. I recommend that the Court conclude that this motion falls within Contreras's waiver, the waiver applies, and the waiver is enforceable. Because I recommend that the Court conclude that Contreras's waiver is applicable and enforceable, I do not address the merits.

### 1. The Waiver Applies

In *United States v. Hahn*, 359 F.3d 1315 (10th Cir. 2004), the Tenth Circuit laid out a two-part analysis used to determine whether a waiver is applicable: "(1) whether the disputed appeal falls within the scope of the waiver . . . ; (2) whether the defendant knowingly and voluntarily waived his appellate rights." *Id.* at 1325. *Hahn* included a third factor for determining whether an appellate waiver is enforceable: "whether enforcing the waiver would result in a miscarriage of justice" as defined by the Tenth Circuit. *Id.* This factor speaks to enforceability, rather than applicability, and is therefore discussed in the next section.

When determining the scope of a waiver, the waiver clause in a plea agreement is strictly construed, with all ambiguities resolved against the government. *Id.* (citing *United States v. Andis*, 333 F.3d 886, 890 (8th Cir. 2003) (en banc); *United States v. Chavez-Salais*, 337 F.3d 1170, 1173 (10th Cir. 2003)). To determine whether a waiver was knowing and voluntary, courts first "examine whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily," and second look for an adequate plea colloquy pursuant to Federal Rule of Criminal Procedure 11. *Id.* (citing *Andis*, 333 F.3d at 890-91; *Chavez-Salais*, 337 F.3d at 1173).

In this case, Contreras brought a collateral attack pursuant to 28 U.S.C. § 2255 and has not alleged that he received ineffective assistance of counsel in negotiating or entering the waiver or the plea agreement. The waiver specifically precludes Contreras from attacking his "conviction and the sentence imposed," except on the issue of ineffective assistance of counsel. (CR Doc. 27 at 7.) Therefore, this case falls squarely within the plain terms of the waiver.

As to voluntariness, Contreras pled guilty before United States Magistrate Judge Stephan M. Vidmar in Las Cruces, New Mexico, on August 7, 2013. (Doc. 38.) Contreras acknowledged

receipt of the indictment and agreed that he had plenty of time to discuss the plea agreement with his lawyer, and that all of his questions had been answered. (*Id.*) Contreras answered questions about his understanding of his plea agreement, the hearing, and his physical condition, and was advised of his constitutional rights. (*Id.*) Contreras agreed that he fully understood the nature of the charges, the terms of his plea agreement, and the consequences of entering a guilty plea, and then pled guilty. (*Id.*) Contreras agreed that he understood the waiver of his appeal rights. (*Id.*) Judge Vidmar then found that Contreras was capable of entering an informed plea and that his plea was knowing and voluntary. (*Id.*) Judge Vidmar accepted Contreras's plea of guilty, adjudged Contreras guilty, and deferred acceptance of the plea agreement to the district judge. (*Id.*) This plea colloquy is adequate under Federal Rule of Criminal Procedure 11. *See Hahn*, 359 F.3d at 1326-27.

The collateral attack waiver satisfies both *Hahn* factors: the instant motion falls squarely within the plain language of the waiver, and Contreras was afforded an adequate plea colloquy. I recommend that the Court conclude that Contreras's motion falls within the waiver and that the waiver applies.

### 2. The Waiver is Enforceable

Because I conclude, and recommend that the Court likewise concludes, that Contreras's motion falls within the waiver and that the waiver applies, I must determine whether the waiver is enforceable under the circumstances. I conclude, and recommend that the Court concludes, that the waiver is enforceable because the district court did not rely on any impermissible factor, Contreras received the effective assistance of counsel when negotiating the waiver, and the waiver is not otherwise unlawful and does not detract from the integrity of these proceedings.

As previously noted, *Hahn* requires courts to consider "whether enforcing the waiver would result in a miscarriage of justice" as defined by the Tenth Circuit. *Id.* at 1325. Contreras bears the burden of showing that a miscarriage of justice will occur if the waiver is enforced. *United States v. Maldonado*, 410 F.3d 1231, 1233-34 (10th Cir. 2005). Factors to be considered on this point include: "whether the plea agreement stated the appropriate statutory maximum, informed the defendant that he was giving up multiple constitutional and appellate rights in exchange for concessions from the government, and implied that the sentence would be imposed in accordance with the guidelines then in effect." *Id.* at 1234. That is, courts must determine whether enforcing the waiver will result in a miscarriage of justice, meaning that "the district court relied on an impermissible factor such as race, . . . [the defendant received] ineffective assistance of counsel in connection with the negotiation of the waiver [which] renders the waiver invalid, . . . the sentence exceeds the statutory maximum, or . . . the waiver is otherwise unlawful." *Hahn*, 359 F.3d at 1326 n.6 (quoting *Andis*, 333 F.3d at 901). To be "otherwise unlawful," the error must "'seriously affect the fairness, integrity or public reputation of judicial proceedings.'" *Id.* at 1327 (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)) (internal alterations omitted). That is, a waiver does not apply if the district court committed plain error in calculating the sentence. *See generally Olano*, 507 U.S. at 732-34.

Hahn and *Maldonado* make clear that the "statutory maximum" in this context is read broadly to include the greatest sentencing range authorized by Congress based on any set of facts or enhancements. *See Maldonado*, 410 F.3d at 1233-34 (clarifying that the term "statutory maximum" is read more broadly in this context than in the context of *Blakely v. Washington*, 542 U.S. 296 (2004), and *Booker v. Washington*, 543 U.S. 220 (2005), which required a jury finding to enhance a sentence); *Hahn*, 359 F.3d at1329. In this case, Contreras agreed during the plea

colloquy that he understood that he could be sentenced to life imprisonment if the Court determined that he qualified as an Armed Career Criminal.

Contreras does not—nor could he—argue that the district court relied on an impermissible factor to craft his sentence and does not argue that he received ineffective assistance in connection with negotiating the waiver. Further, the statutory maximum sentence in Contreras's case, within the meaning of *Hahn*, was life imprisonment, 18 U.S.C. § 924(e)(1) (outlining the maximum penalty for a defendant convicted of violating 18 U.S.C. § 922(g) who has also been convicted of three prior qualifying felonies), and Contreras was sentenced to 168 months' incarceration. Therefore, Contreras's only argument that upholding his sentence would constitute a miscarriage of justice must come under the fourth, and most amorphous, option: that the waiver is otherwise unlawful and seriously affects the fairness, integrity, or public reputation of judicial proceedings.

The Tenth Circuit confronted a similar problem in *United States v. Porter*, 405 F.3d 1136 (10th Cir. 2005), when it considered whether a subsequent change in the law rendered a defendant's waiver unenforceable. *Id.* at 1144. In *Porter*, the Tenth Circuit noted that other circuits had already rejected claims that the change wrought by *United States v. Booker*, 543 U.S. 220 (2005)—that is, the sentencing guidelines went from being mandatory to advisory—did not invalidate otherwise lawful plea agreements. 405 F.3d at 1145 (citing *United States v. Sahlin*, 399 F.3d 27, 31 (1st Cir. 2005); *United States v. Bradley*, 400 F.3d 459, 463-66 (6th Cir. 2005)).

"[C]riminal defendants may waive both rights in existence and those that result from unanticipated later judicial determinations." *Id.* at 1144 (citing *Brady v. United States*, 397 U.S. 742, 757 (1970)). "[A] voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable just because later judicial decisions indicate that the

plea rested on a faulty premise." *Brady*, 397 U.S. at 757; *see also United States v. Ruiz*, 536 U.S. 622, 630 (2002).

Under this reasoning, the Tenth Circuit found that "the change *Booker* rendered in the sentencing landscape does not compel us to hold Porter's plea agreement unlawful." *Porter*, 405 F.3d at 1145. It is worth noting that *Porter* arose on direct appeal, rather than collateral attack. Indeed, *Porter* was pending on direct appeal when *Booker* was decided. *Id.* Nonetheless, the analysis remains the same: "[t]he essence of plea agreements . . . is that they represent a bargained-for understanding between the government and criminal defendants in which each side foregoes certain rights and assumes certain risks in exchange for a degree of certainty as to the outcome of criminal matters. One such risk is a favorable change in the law." *Id.*

The same logic applies in this case. Additionally, enforcement of Contreras's plea agreement does not seriously affect the fairness, integrity, or public reputation of judicial proceedings. Contreras's plea agreement and colloquy made clear that he faced a maximum sentence of life imprisonment for the charged conduct, that he gave up multiple constitutional and appellate rights in exchange for concessions from the government, and that he would be sentenced in accordance with the guidelines then in effect. The sentence imposed by the district court conformed with the terms of that agreement and the understanding expressed by Contreras at the plea hearing. Contreras has therefore failed to show that enforcing the waiver would result in a miscarriage of justice.

## CONCLUSION

I recommend that the Court conclude that this motion falls within the scope of Contreras's waiver of collateral attack, that the waiver applies, and that the waiver is enforceable. Based on this, I recommend that the Court deny Contreras's motion and dismiss this

case. I further recommend that the Court deny a Certificate of Appealability pursuant to 28

U.S.C. § 2253(c).

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition.  If no objections are filed, no appellate review will be allowed.**

_____
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.